1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

11   MICHAEL RODRIGUEZ,                     Case No.:  20-cv-150-JAH
12                         Plaintiff,
                                            **ORDER GRANTING DEFENDANT'S**
13   v.                                     **MOTION FOR SUMMARY**
                                            **JUDGMENT AND DENYING**
14   RALPHS GROCERY COMPANY, an             **PLAINTIFF'S MOTION FOR**
     Ohio Corporation; and DOES 1-10,      **SUMMARY JUDGMENT**
15
16                         Defendants.

17
18                          **INTRODUCTION**
19         Pending before the Court are Plaintiff Michael Rodriguez's ("Plaintiff" or
20   "Rodriguez") and Defendant Ralphs Grocery Company's ("Defendant" or "Store") Cross
21   Motions for Summary Judgment, filed pursuant to Fed. R. Civ. P. 56. *See* Doc. Nos. 20,
22   21. The motions have been fully briefed. *See* Doc. Nos. 24-27. For the reasons explained,
23   the Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.
24                       **FACTUAL BACKGROUND**
25         Plaintiff Michael Rodriguez shops at his neighborhood grocery store, the Food 4
26   Less located at 312 Euclid Avenue, San Diego California, which is located less than a half
27   mile from his home. The Store has numerous cart corrals located throughout the parking
28   lot where customers are to deposit their shopping carts after use. Occasionally customers

dispose of their shopping carts outside of the designated corrals, which are eventually picked-up and retrieved by Store employees.

To ensure carts are disposed of into the proper corrals, the Store employs cart associates. The primary duty of the cart associate is to visually inspect the Store's parking lot and retrieve all shopping carts from outside the Store and bring them back to the cart storage area in front of the store.

Plaintiff cannot walk independently because he has cerebral palsy, so he uses a wheelchair for mobility. On two occasions in November 2019 and on two occasions in December 2019, Plaintiff visited the Store to buy groceries. Along Euclid Avenue, Rodriguez can take one of two paths of travel to the store: 1) a path located along the south side of Wells Fargo that leads into the Store parking lot; 2) a path located further south on Euclid Avenue, after crossing Naranja Street, which provides a switchback ramp leading to a marked path of travel toward the Store. During the alleged visits, Rodriguez used either of the aforementioned paths to get to and from the Store. During each of these visits, Rodriguez encountered shopping carts blocking the path of travel, making it difficult for him to pass through in his wheelchair. On each of the November 2019 visits, Rodriguez complained to the Store manager at least twice, who assured Plaintiff the issues would be taken care of.

Since those visits, Rodriguez has continued to visit the Store, including several times between August and November 2020, wherein he repeatedly encountered shopping carts blocking the paths of travel, specifically on the switchback ramp and on or near the walkway in front of the Store. On several occasions, shopping carts that were collected and stacked together were left on the path of travel, usually off to one side but still crowding the way. Rodriguez complained about the obstructions several more times and asked the Store manager to change policies so that the paths are kept clear of shopping carts.

On several occasions, Rodriguez has had to either move shopping carts out of his way to pass, or otherwise ride his wheelchair in the vehicular way to access the store when unable to get around carts another way. The latter caused Rodriguez discomfort as

he feared he would be hit by a car. During one of his November 2019 visits, cars honked at Rodriguez, and a security guard even shouted at him when he used the vehicular way to access the Store.

## PROCEDURAL BACKGROUND

Plaintiff filed a complaint on January 22, 2020, asserting claims for (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*; (2) disability discrimination for failure to reasonably accommodate, 42 U.S.C. § 12182; and (3) disability discrimination for failure to reasonably accommodate in violation of the Unruh Civil rights Act ("Unruh"), Cal. Civ. Code § 51-53. Plaintiff names Ralphs Grocery Company and Does 1-10 as defendants. Plaintiff alleges that he is a paraplegic who cannot walk and who uses a wheelchair for mobility. Complaint ¶ 1 (Doc. No. 1). He alleges that on two occasions in November 2019 and two occasions in December 2019, Defendant failed to provide accessible paths of travel leading from the parking lot to the store entrance within the ADA standards as related to wheelchair users like Plaintiff. *Id.* ¶¶ 8, 10.

Defendant filed an answer on February 10, 2020 and the parties jointly filed a discovery plan on June 2, 2020. On June 8, 2020 the Honorable William V. Gallo, United States Magistrate Judge, issued a Scheduling Order. On February 26, 2021 Defendant Store and Plaintiff filed separate motions for summary judgment. The parties filed respective oppositions on March 26, 2021, and both filed respective replies on April 9, 2021.

## LEGAL STANDARD

Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at

323. Where the party moving for summary judgment does not bear the burden of proof at trial, as here, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id*. at 325. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the non-moving party's claim. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989). "Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." *Lujan*, 497 U.S. at 885 (quoting *Celotex*, 477 U.S. at 323).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. *See Schneider v. TRW, Inc.*, 938 F.2d 986, 990-91 (9th Cir. 1991). A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 248).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ... ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

Cross-motions for summary judgment do not necessarily permit the judge to render judgment in favor of one side of the other. *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975). The court must consider each motion separately "on its own merits" to determine

whether any genuine issue of material fact exists. *Fair Hous. Council of Riverside Cnty, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001); *Starsky*, 512 F.2d at 112. When evaluating cross-motions for summary judgment, the court must analyze whether the record demonstrates the existence of genuine issues of material fact, both in cases where both parties assert that no material factual issues exist, as well as where the parties dispute the facts. *See Fair Hous. Council of Riverside Cnty*, 249 F.3d at 1136 (citing *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1037 n.5 (9th Cir. 2000)).

<u>**DISCUSSION**</u>

**I.    Defendant's Motion for Summary Judgment**

Defendant argues that 1) Plaintiff's Inaccessible Path of Travel claim fails for lack of fair notice; 2) Plaintiff's ADA and Unruh Act claims lack merit; 3) Plaintiff's claims for injunctive relief are moot; and 4) if the Court does not dismiss Plaintiff's Unruh Act claim with prejudice, then it should decline supplemental jurisdiction over the claim.

**A. Plaintiff's Complaint Lacks Sufficient Notice**

FRCP Rule 8 states that a civil complaint "must contain…a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted the "short and plain statement" requirement to mean that the complaint must provide "the defendant [with] fair notice of what…the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). Where the ADA claim is based on architectural barriers at a place of public accommodation, as here, the Ninth Circuit has held that the relevant grounds for a claim for discrimination are the allegedly non-compliant architectural features at the facility. *Oliver v. Ralphs Grocery Co.*,

654 F.3d 903, 908 (9th Cir. 2011) (citing *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006). "For the purposes of Rule 8, a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself; a defendant is not deemed to have fair notice of barriers identified elsewhere." *Id.* at 909.

Under the Unruh Act, Plaintiffs must allege facts showing that they actually suffered the discriminatory conduct being challenged and possess a concrete and actual injury that is not merely hypothetical or conjectural. *Vargas v. Facebook, Inc.*, No. 19-cv-05081-WHO, 2021 U.S. Dist. LEXIS 12485, at *8-9 (N.D. Cal. Jan. 21, 2021) (citing *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 165 (2007); *White v. Square, Inc.*, 7 Cal. 5th 1019, 1032 (2019)). Any violation of the right of an individual under the ADA constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f).

Defendant argues that Plaintiff's complaint fails to provide proper notice under Federal Rule of Civil Procedure 8, because an ADA plaintiff alleging violations based on obstructions to public accommodations must identify all alleged access barriers in his complaint in order to give the defendant fair notice. Indeed, the Ninth Circuit has repeatedly held that under the *Iqbal/Twombly* fact-pleading requirement, an ADA complaint that does not allege the specific barriers or deficiencies which denied him access does not provide fair notice under FRCP 8. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021); *Whitaker v. Panama Joes Investors LLC*, 2021 WL 238401, *1-2, fn. 2 (9th Cir. 2021); *Oliver*, 654 F.3d at 909, fn. 7. In *Oliver*, the Ninth Circuit specifically held:

> Plaintiff's counsel later explained that his delays in identifying the barriers at the facility were part of his legal strategy: he purposefully 'forces the defense to wait until expert disclosures (or discovery) before revealing a complete list of barriers,' because otherwise a defendant could remove all the barriers prior to trial and moot the entire case…[F]or purposes of Rule 8, a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself; a defendant is not deemed to have fair

notice of barriers identified elsewhere.

*Oliver*, 654 F.3d at 909, fn. 7.

Plaintiff's complaint alleges that Defendant "failed to provide accessible paths of travel leading from the parking lot to the Store entrance within the ADA Standards." Defendant contends that such an allegation fails to answer basic questions such as what was wrong with the paths of travel, were they too narrow, were the running slopes too steep, were the cross-slopes too steep, etc. Defendant further argues the complaint is legally insufficient in that the complaint makes no mention of shopping carts whatsoever.

In response, Plaintiff argues that Defendant has waived his challenge to the sufficiency of Plaintiff's Complaint by failing to raise the Rule 12(b) defense at an earlier stage in the litigation. For this proposition, Plaintiff cites *King v. Taylor*, 694 F.3d 650, 658 (6th Cir. 2012). However, the *King* case is not from this circuit and is therefore not binding authority for this Court's decision. Furthermore, as Defendant points out, the court in *King* held only that the defendant had waived his lack of proper service defense through extensive participation in the litigation. *King*, 694 F.3d at 658.

Plaintiff further argues that at the time he filed his complaint, he had a non-frivolous basis to believe that his pleading was sufficient under *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832 (9th Cir. 2007). Plaintiff acknowledges that while the argument in *Skaff* was ultimately rejected by the Ninth Circuit in *Tesla, supra*, that case was not decided until January 25, 2021, a year after the Complaint was filed. While changes in controlling authority commonly occur throughout the lifespan of a given case, the Court finds Plaintiff's reliance on *Skaff* is misplaced. As the Ninth Circuit pointed out in *Tesla*, *Skaff* was decided prior to the Supreme Court's decisions in *Iqbal* and *Twombly*. *Tesla*, 985 F.3d at 1179. This means *Skaff* was decided when the standard under. Fed. R. Civ. P. 8 was notice pleading, a standard squarely rejected by *Iqbal* and *Twombly*. *Id.* Furthermore, the Ninth Circuit went on to point out that the proper, fact-based pleading required for an ADA claim is described in detail in *Chapman v. Pier 1 Imps.*, 631 F.3d 939 (9th Cir. 2011), a case cited to and relied on by Plaintiff in his response to the instant motion. *Id.* Therefore,

Plaintiff's reliance on the *Skaff* pleading standard is unavailing in the face of prominent caselaw requiring otherwise.

Ultimately, the Court finds Plaintiff's complaint fails for lack of fair notice. The Ninth Circuit has repeatedly held that ADA complaints that fail to identify the specific barriers or deficiencies which harmed a plaintiff fail to comply with Rule 8's notice requirements. *See Tesla,* 985 F.3d at 1177; *Whitaker*, 2021 WL 238401, *1-2, fn. 2; *Oliver*, 654 F.3d at 909, fn. 7 Furthermore, in direct contravention of the standards set by *Iqbal* and *Twombly*, a review of Plaintiff's complaint reveals nothing more than conclusory allegations without any specific facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-87 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-64 (2007). Plaintiff's complaint alleges: 1) the Store is a place of public accommodation; 2) on the dates of Plaintiff's visits, Defendant failed to provide accessible paths of travel leading from the parking lot to the Store entrance within the ADA Standards as it relates to wheelchair users like Plaintiff; 3) the Defendant currently fails to provide accessible paths of travel leading from the parking lot to the Store entrance; 4) those barriers relate to and impact Plaintiff's disability, and that Plaintiff personally encountered these barriers; 5) that by failing to provide accessible facilities, Defendant denied Plaintiff full and equal access…and so on in recitation of the elements of an ADA claim. However, Plaintiff's complaint does not identify which specific paths were deficient or how they were deficient, so the complaint ultimately amounts to no more than a threadbare recitation of the elements as required by the statute and caselaw.

Furthermore, logical inconsistencies in Plaintiff's complaint, at odd with the instant motion for summary judgment, must be noted. First, Plaintiff's complaint alleges the barriers are obvious and blatant in nature, despite the fact that no specific barriers are mentioned at all in the complaint. Second, in that same paragraph, Plaintiff alleges that there are other violations and barriers on site related to Plaintiff's disability, and that Plaintiff "will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection." Plaintiff therefore intrinsically acknowledges

that without specificity his complaint would fail to provide adequate notice. And while Plaintiff did commission an expert site investigation, he has not sought to amend his complaint.

Moreover, while it is true Defendant could have moved to dismiss for lack of notice at an earlier stage, it should be noted that Defendant's motion for summary judgment came prior to the close of discovery, and Defendant only became aware of the specifically alleged barriers by way of discovery mechanisms: responses to interrogatories and an expert report filed by Plaintiff. Finally, as Defendant points out, the Ninth Circuit has routinely permitted and upheld summary judgment decisions where complaints provided insufficient notice. *Gray v. County of Kern*, 704 Fed. Appx. 649, 650-51 (9th Cir. 2017); *Duarte v. M&L Brothers Pharmacy, Inc.*, 2014 WL 5663921 at *3 (C.D. Cal. 2014); *Oliver*, 654 F.3d at 909.

Thus, to the extent Plaintiff's claims are based on the alleged shopping cart barriers identified only in the parties' cross-summary judgment motions, Defendant is entitled to summary judgment on those aspects of Plaintiff's ADA claims under Rule 8. [1] *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-89 (9th Cir. 2006) (affirming trial court's decision to disregard plaintiff's newly asserted ADA violations at the summary judgment stage because it would violate Rule 8's fair notice requirement); *see e.g.*, *Navajo Nation v. U.S. forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such a claim in a summary judgment motion is insufficient to present the claim to the district court").

---

[1] In response to Defendant's motion for summary judgment, Plaintiff argues that at the very least he should be granted leave to amend, however such a request is insufficient without more. If Plaintiff seeks to amend his complaint, he may do so only by filing a motion showing good cause why he should be permitted to amend his complaint outside of the July 7, 2020 deadline imposed by Judge Gallo's Scheduling Order (Doc. No. 17) as required by Fed. R. Civ. P. 16(b)(4). *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-09 (9th Cir. 1992)).

**B. ADA and Unruh Claims Lack Merit**

Next, Defendant maintains that Plaintiff's ADA and Unruh claims lack merit, because the claimed obstructions were only temporary. Defendant cites to a number of cases for the proposition that temporary interruptions in access or isolated denials of access, negligence, or trivial violations are insufficient to support a claim under the ADA or Unruh Act.

In *Jinkins v. Wal-Mart Realty Company*, the plaintiff alleged that shopping carts and movable trash cans obstructed the paths of travel in the parking lot in violation of the ADA and the Unruh Act. *Jinkins v. Wal-Mart Realty Co.*, 2019 WL 1670825 (C.D. Cal. Jan. 15, 2019). In its motion for summary judgment, the defendant directed the court to a DOJ Technical Assistance Manual which provided that "Isolated or temporary interruptions in access due to maintenance and repair of accessible features are not prohibited…An isolated instance of placement of an object on an accessible route would not be a violation, if the object is promptly removed." *Id.* at *2 (citing ADA Title III Technical Assistance Manual, § III-4.4110, located at https://www.ada.gov/taman3.html).[2] The defendant submitted a declaration from a company representative stating that their employees regularly inspected the parking lot to retrieve shopping carts that were not placed in cart corrals by customers. *Id.* at *1. There, the plaintiff claimed that he visited the store on three occasions, but that accessible paths were blocked each time. *Id.* Similarly to the case at bar, the plaintiff also hired an investigator who observed the same obstructions on two separate occasions. *Id.* Despite such evidence, the court granted summary judgment to defendant, holding:

On this record, no reasonable jury could conclude that the obstructions caused

---

[2] Regulations promulgated by the DOJ, which govern compliance with the ADA, are given controlling weight, under *Chevron*. *Chapman*, 631 F.3d at 947, ("[T]he ADAAG establishes the technical standards required for "full and equal employment," if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access which constitutes "discrimination" under the ADA."); *Oliver*, 654 F.3d 903 at fn. 4, ("Because the Attorney General developed the ADAAG pursuant to an express delegation of authority by Congress, § 12186(b), courts must give ADAAG "controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." (citations omitted)).

by shopping carts and trash cans were more than isolated or temporary interruptions in access or persisted beyond a reasonable time…due to Defendants' policy and practice regarding shopping carts and the presence of cart associates, any obstruction caused by a shopping cart or trash can would temporarily exist for no more than minutes. Remediating such obstructions within minutes is eminently reasonable.

*Id.* at *3.

Defendant notes that in *Jinkins*, in a footnote, the court recognized that the customers' role in leaving shopping carts in accessible routes was significant in that it affects what a factfinder can reasonably expect of property owners in the defendant's position. *Id*. at *4, fn. 5. Defendant argues that distinction is important under *Montoya v. City of San Diego*, which found no legal basis for holding a private entity liable for ADA/Unruh Act violations of third parties, such as its customers. *Montoya v. City of San Diego,* 434 F.Supp.3d 830, 851 (S.D. Cal. 2020).

In *Tanner v. Wal-Mart Stores, Inc,* the court held that a store's failure to remove a shopping cart obstruction and ice from the sole accessible parking space on one occasion was a temporary denial of access that did not violate the ADA. *Tanner v. Wal-Mart Stores, Inc.*, 2000 U.S. Dist. LEXIS 1444 at *15-*17 (D.N.H. Feb. 8, 2000). There, when the disabled plaintiff's wife saw the shopping carts, she exited the vehicle to move the carts and slipped and fell on the ice. *Id.* at 4. In granting the defendant's motion for summary judgment on the plaintiff's ADA claim, the court noted that an isolated instance of placement of an object in an accessible route is not a violation. *Id.* at *16.

Here, Defendant claims it employs cart associates who are constantly and continuously inspecting the parking lot and retrieving shopping carts from the parking lot, so any cart obstructions exist for no more than a few minutes. Defendant argues that employing cart associates satisfies the requirements of the ADA and therefore it cannot be held liable for obstructions caused by third parties such as

20-cv-150-JAH

customers.

In response, Plaintiff points out that all the cases relied on by Defendant involved a single incident that was addressed within minutes or hours, and not later repeated. In contrast, Plaintiff alleges he has repeatedly encountered the shopping carts which obstruct the paths of travel on multiple occasions, and that even after speaking with management the barriers were not removed after a brief delay as required by the Americans with Disabilities Act Guidelines ("ADAAG").[3]

Plaintiff argues the instant case is distinct from *Jinkins*, because in *Jinkins* the plaintiff failed to produce evidence disputing the efficacy of the defendant's policy by showing that the few incidents alleged "persisted beyond a reasonable period in time" and were not just temporary or isolated incidents. *Jinkins* at 3. Here, Plaintiff alleges the shopping carts obstructed his path of travel on countless occasions beyond the November and December 2019 visits that purportedly gave rise to the complaint.

Plaintiff contends his case is more akin to the case in *Chapman v. Pier 1 Imports (U.S.), Inc.*, 779 F.3d 1001 (9th Cir. 2015) (hereinafter "Chapman II").[4] In *Chapman II*, the Ninth Circuit found that the defendant had repeatedly failed to maintain accessible routes in its stores, despite the defendant having a policy in place to keep the store aisles clear. *Id*. at 1007-08. In acknowledging the policy, the Ninth Circuit found that the "policies and procedures were either ineffective in preventing frequent blocking of aisles or honored in the breach." *Id.* at 1008.

It is Plaintiff's contention that the cart removal policy and employment of cart associates in the instant case are therefore similarly ineffective, given the number of

---

[3] *See* footnote 2, *supra*. The ADAAG are part of the ADA Title III Technical Assistance Manual, which the Supreme Court has cited as the authority on the ADA and has held that the Department of Justice's views are entitled to deference. *Bragdon v. Abbot*, 524 U.S. 624, 646 (1998).

[4] *Chapman II* is the procedural continuation of the *Chapman* case previously cited. *Chapman II*, 779 F.3d at 1103-04.

20-cv-150-JAH

times Rodriguez encountered the issue. Plaintiff also notes that in *Chapman II*, the Ninth Circuit expressly considered the affirmative actions the defendant's employees took in placing large furniture and display racks in the aisles in its reasoning. *Id.* at 1009. Plaintiff therefore argues that Defendant cannot avoid liability even if the bulk of obstructing carts were the result of customer negligence, because Plaintiff and his expert have both observed instances where Defendant's employees were the source of the same obstructions.

It is worth noting that in *Jinkins* the plaintiff encountered barriers a total of five times over an alleged one-year period. *See Jinkins* at *5. Here Plaintiff correctly observes that in *Jinkins* and the other cases cited by Defendant, the obstructions were truly isolated events or else there was no evidence to the contrary. In contrast, Plaintiff is alleging countless instances beyond the four that purportedly gave rise to the complaint in the instant case. To that end, Plaintiff rightly claims the instant case is more akin to *Chapman II*, in which eleven obstructions were alleged. However, the similarities end there.

Similar to the case in *Jinkins*, the misplacement and abandonment of shopping carts in Plaintiff's case was the result of negligent customers as opposed to a reflection of conduct by Defendant Store and its employees. *See Jinkins* at *1. In contrast, many of the obstructions in *Chapman II* were caused by the affirmative conduct of the defendant's employees. *Chapman II* at 1009. And in both cases, as well as in the instant case, the defendant stores had policies in place to ensure that paths of access remained unobstructed. *Jinkins* at *1; *Chapman II* at 1008.

In *Chapman II*, the evidentiary value of the policy was undermined by the employees willfully violating it and, in the process, violating the law as well. *Chapman II* at 1008-09. In *Jinkins* and in the instant case, the alleged obstructions occurred not because of willful policy violations by employees, but instead because of endless customer negligence – despite existing policies and employed cart

associates.[5] *See Jinkins*, 2019 WL 1670825. Moreover, in *Chapman II*, the obstructions were heavy, large furniture (armchairs) and bulky display racks. *Chapman II* at 1007. Here, the alleged obstructions are shopping carts, which in addition to being inherently mobile due to their wheels, are also easily manipulated out of the way. To that end, the Court finds the reasoning in *Jinkins* is most analogous to the instant case.

Defendant argues that despite Plaintiff's claims, he has actually submitted zero evidence regarding how long any allegedly obstructing carts remained in non-designated areas. Defendant argues that since customers are constantly coming to and leaving the Store, submitting a photograph of a cart that a customer did not place in a cart corral has no bearing on how long the cart remained there. Defendant argues further that the statements made by Plaintiff and his investigator that Defendant's employees were the source of misplaced carts on some occasions is immaterial, because on those occasions (as confirmed by the investigator's photos themselves) the employees were simply collecting carts to remove from the accessible routes and the parking lot. Defendant notes that even while amassing the carts, employees were placing those carts to the side leaving ample room for wheelchair access.

Assuming the specifically identified barriers are properly before the court, including the obstructions noted by Plaintiff's investigator which Plaintiff did not actually encounter, Plaintiff has not submitted any evidence tending to show the obstructions were not temporary. Even if Plaintiff's additional facts were contained in the Complaint, and viewing the facts and evidence in a light most favorable to Plaintiff as the non-movant, Plaintiff's own evidence only strengthens Defendant's argument.

In Plaintiff investigator's first set of photos, two different paths of access are photographed, and each photo has a time stamp. The time between the first photo and the

---

[5] This evidence compounds with the photos submitted by Plaintiff, discussed below, which plainly show that Defendant's employees indeed work to remove carts from the paths.

20-cv-150-JAH

last photo total thirty-two minutes. For the path of access leading to the front of the store, there are seven photos, all from different vantage points. In four of those photos, a stack of carts at the front of the store is depicted, however in each of the photos the stack has been moved or shifted. In the photos with a later time stamp, the stack of carts is shown to have grown. In one of the photos, a cart associate can be seen physically removing the carts. In the remaining three photos depicting areas leading to the front of the store, they are each independent from the others, so it is impossible to tell how long the carts were in place. In the remaining two photos depicting a path of travel not leading to the front of the store, the path is completely clear at 4:13 p.m., and then at 4:17 p.m. a single cart at the cart corral is at an angle and one wheel is just over the line into the marked accessible path, however there is more than enough space for a wheelchair to pass.

In Plaintiff investigator's second set of photos, taken at least fifteen days later, the same two paths of access are photographed over the span of five hours. For the path of access leading to the front of the store there are again seven photos, all from different vantage points. Again, in four of those photos, a stack of carts is depicted at the front of the Store, and in each of the photos the stack has been moved or shifted: in two of the photos, taken two seconds apart, the stack is to one side and mostly in the vehicular way so as not to obstruct the wheelchair path; in the other two photos, taken less than an hour later, a cart associate is unquestionably in the process of stacking carts for removal. The remaining three photos leading to the front store were taken from different vantage points; the second photo was taken two hours after the first photo, and the third photo was taken thirty-five minutes later. In all three photos, the obstructing carts are in different places, so it cannot be said that any one obstruction remained for a given period of time. In this set there is only one photo of the other path of access, and carts are plainly depicted obstructing the path. However, the evidence does not demonstrate how long those obstructions persisted because there are no other time-stamped photos of that path of travel.

Additionally, Plaintiff himself documented and submitted three sets of photographs of allegedly violative obstructions encountered on his visits to the Store. The first set was

15

taken in August 2020, the second set in September 2020, and the third in October 2020. Importantly, all three sets of photos taken by Plaintiff were taken after his complaint was filed and do not necessarily support the alleged obstructions that gave way to the causes of action now before the Court. Furthermore, the Court finds it difficult to appreciate how these photos advance Plaintiff's position. In his declaration, Plaintiff claims the photos show the switchback ramp and its purported obstructions, as well as the paths of travel leading directly to the store. However, the photos are grainy, do not actually depict obstructions in paths of travel, and ultimately it is very hard to discern what exactly is being captured. To that end, the photos taken by Plaintiff himself do not move the needle one way or the other.

As such, the Court finds Defendant has met its burden by showing that the alleged barriers were in fact temporary in nature, and therefore not in violation of the ADA. Even viewing the evidence in a light most favorable to Plaintiff as the non-movant, Plaintiff has not shown a genuine issue of material fact to avoid the granting of summary judgment in Defendant's favor. Accordingly, Defendant is entitled to summary judgment on this issue as a matter of law.

**C. Plaintiff's Claims for Injunctive Relief are Moot**

Defendant argues that even if Plaintiff's complaint somehow provided sufficient notice and even if his claims were somehow viable, the ADA claims in their entirety should be dismissed as moot. "A case becomes moot – and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 726 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). Defendant contends that the voluntary removal of alleged barriers prior to trial can have the effect of mooting an ADA claim, because a private ADA plaintiff may only sue for injunctive relief (i.e., for removal of the barrier). *Oliver*, 654 F.3d at 905 (citing *Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d 1134, 1145 (S.D. Cal. 2006); *see* 42 U.S.C. § 2000a-3(a), 12188(a)(2); *cf. Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176,

1179-80 (9th Cir. 2010).

As a basis for its argument, Defendant cites Plaintiff's response to its interrogatory. Defendant asked Plaintiff to identify, in specific terms, all injunctive relief he seeks in this action. In Plaintiff's Response to Interrogatory No. 8, attached as Exhibit B to the Chilleen Declaration, Plaintiff replied: "Plaintiff would like Food 4 Less to create a policy or standard operating procedure so carts are frequently removed from the paths of travel during business hours." Defendant therefore argues that Plaintiff's claims for injunctive relief is therefore moot, because such a policy exists and was in place prior to Plaintiff filing the complaint.

Defendant next argues that even if Plaintiff could show that Defendant occasionally fails to follow its cart retrieval policy/practice, he would not be entitled to injunctive relief, because it is well established that a Plaintiff is not entitled to an injunction merely because employees violate their employer's ADA policies or practices. In support, Defendant relies on *Midgett v. Tri-County Metropolitan Transportation District of Oregon*, where malfunctioning bus elevators for riders using wheelchairs was at issue. There the Ninth Circuit held:

> "[T]he district court did not abuse its discretion by denying Plaintiff's request for a permanent injunction. Plaintiff's evidence establishes several frustrating, but isolated, instances of malfunctioning lift service on Tri-Met. The evidence also shows that unfortunately, a few individual Tri-Met operators have not treated passengers as they are required and trained to do. Under the regulations, these occasional problems do not, without more, establish a violation of the ADA. At most, the evidence shows past violations of the ADA. It does not, however, support an inference that Plaintiff faces a real and immediate threat of continued, future violations of the ADA in the absence of injunctive relief…"

*Midgett v. Tri-County Metropolitan Transportation District of Oregon*, 254 F.3d 846, 850 (9th Cir. 2001).

However, the Supreme Court summarized the standard for establishing mootness when a defendant has ceased the challenged conduct in *United States v. Concentrated Phosphate Export Ass'n* as follows:

> "The test for mootness in such cases as this is a stringent one. Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways. A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."

*United States v. Concentrated Phosphate Export Ass'n*, U.S. 199, 203-04 (1968) (citations omitted). The burden of establishing mootness lies with Defendant, and Plaintiff argues Defendant has not met that burden. *Friends of the Earth Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

In support of his argument, Plaintiff cites *Moeller v. Tacobell* and *Langer v. Kaimana*. In *Moeller*, the court rejected the defendant's argument that claims for injunctive relief were moot because the defendant had a documented history of violating its own ADA policies. *Moeller v. Tacobell*, 816 F. Supp. 2d 831, 860-61 (N.D. Cal. 2011). In *Langer*, the court denied the defendants' motion to dismiss, because there was no evidence that they would actually follow their newly enacted policy of not placing merchandise and a dumpster in the access aisle next to a wheelchair accessible parking spot. *Langer v. Kaimana LLC*, 2016 WL 7029151 at *1-2 (C.D. Cal. 2016).

The Court finds Defendant has met its burden of establishing that the alleged ADA violations are not likely to recur. As contemplated by the Supreme Court in *Concentrated Phosphate* at 203-04, voluntary cessation of allegedly wrongful conduct does not moot a case, but there is no cessation in the instant case. As discussed throughout this Order, Defendant already had in place a policy for removing shopping carts from paths of travel that predates Plaintiff filing his complaint.

Furthermore, the Court finds the cases relied on by Plaintiff are readily

distinguishable from the immediate action. In contrast to *Moeller*, the record does not reflect that Defendant Store has any history of violating its own ADA policies, including its policy of employing cart associates. And unlike in *Langer*, Defendant's cart-employee policy predates this litigation and Plaintiff's own photos of Defendant's employees show that the policy is enforced. Accordingly, the Court may reasonably presume Defendant will continue adhering to its own policy of having employees regularly remove shopping cart obstructions.

For the reasons stated, Defendant has met its burden on summary judgment, and the burden therein became Plaintiff's to show that there are in fact 'live' issues presented for a jury to decide. Having failed to meet that burden, the Court finds there is no longer a live "Case" or "Controversy" for purposes of Article III and Plaintiff's ADA claims are moot as a matter of law. Review of Plaintiff's complaint reveals that Plaintiff's Unruh Act claim is entirely predicated on his ADA claims. Accordingly, Plaintiff's Unruh Act claim is also moot as a matter of law.

**D. The Court Declines Supplemental Jurisdiction Over Plaintiff's Unruh Claims**

Defendant argues that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state Unruh claim, because Plaintiff's entire Unruh claim is predicated on his ADA claims. Under 28 U.S.C. § 1367(c), courts may properly exercise their discretion to decline supplemental jurisdiction if any of four statutory grounds exist:

"(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or

claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has

original jurisdiction, or

(4) in exceptional circumstances, there are other compelling

reasons for declining jurisdiction."

28 U.S.C. § 1367(c).

Defendant points out that the Supreme Court has instructed that once federal claims

are dismissed, courts should decline supplemental jurisdiction over related state-law claims:

> "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims."

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, fn. 7 (1988);

Defendant asserts that in ADA barrier cases, courts properly and routinely decline supplemental jurisdiction over related state-law access claims once the ADA cause of actions have been dismissed. *See Oliver* at 903; *see, e.g., Wilson v. Costco Wholesale Corporation*, 426 F. Supp. 2d 1115, 1124 (S.D. Cal. 2006) ("Because the Court has dismissed all claims over which it has original jurisdiction in this matter, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims").

In reply, Plaintiff argues that judicial economy is the essential policy behind the modern doctrine of pendent jurisdiction, and therefore jurisdiction should be retained when significant judicial resources have already been committed. *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966). Plaintiff argues that Defendant fails to recognize that judicial resources have already been exerted in this case, and as such the court should not now decline jurisdiction.

As discussed above, any violation of the right of an individual under the ADA constitutes a violation of the Unruh Act. Cal. Civ. Code. § 51(f). Since Plaintiff's Unruh Act claim is entirely predicated on his ADA claims, the Court finds sufficient grounds exist to decline exercising supplemental jurisdiction under 28 U.S.C. § 1367(c) because the Court has dismissed the ADA claims over which it had original jurisdiction. The Court further finds that contrary to Plaintiff's arguments, retaining jurisdiction would be a drain on judicial resources because without Plaintiff's ADA claims there can be no jurisdictional hook. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act Claim.

## II.   Plaintiff's Motion for Summary Judgment

In Plaintiff's Cross-Motion for Summary Judgment, he does not raise any new grounds or present any new facts from those argued in response to Defendant's motion. However, unlike his responsive pleading, Plaintiff's own motion does refer to some administrative authorities for guidelines regarding provision and maintenance of accessible routes. For example, Plaintiff points out that at least one accessible route must be provided within the site from the public streets and sidewalks to the accessible building. 36 C.F.R., Pt. 1191, Appendix B (Scoping 206.2.1). Plaintiff also shows that the "[a]ccessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20 (5.0%), doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts." 36 C.F.R., Pt. 1191, Appendix D (Building Blocks: 402.2). Ultimately, Plaintiff argues that as a public accommodation, Defendant Store had an affirmative duty to maintain all features required for providing ready access to persons with disabilities, and Defendant breached that duty when it failed to remove shopping carts from the paths of travel.  28 C.F.R., Part 36, Appendix C, § 36.211 (emphasis added).

In response, Defendant repeats and relies upon the facts and circumstances contained in its own motion for summary judgment and therefore does not address Plaintiff's argument. Regardless, Plaintiff's motion for summary judgment must be denied.

First, in addition to the lack of notice in the complaint concerning the shopping cart obstructions, the complaint also failed to provide notice of the guidelines relied on in Plaintiff's motion and how or why Defendant violated those guidelines as required by *Iqbal/Twombly*. Second, in support of Plaintiff's motion, Plaintiff supplies the same photographs used in support of his opposition to Defendant's motion, wherein shopping carts seem to be mostly out of or to the side of dedicated paths or were placed only temporarily. Absent here is a connection between the numerous photos of claimed "obstructions" and a violation of any statutory, regulatory, or judicial authority on the ADA such that Plaintiff is entitled to relief as a matter of law. These findings and others contained herein preclude a determination that Plaintiff is entitled to summary judgment.

## CONCLUSION

Plaintiff's Complaint fails to provide sufficient notice in compliance with Fed. R. Civ. P. 8 and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Furthermore, Plaintiff's claim under the ADA is without merit, as the alleged obstructions to the paths of travel were only temporary and Defendant has a policy in place to remove any such barriers in a timely fashion. Because Plaintiff's Unruh Act claim is predicated entirely on the existence of a valid ADA claim, his Unruh Act claim is also necessarily meritless. For the foregoing reasons: **IT IS HEREBY ORDERED** Defendant's motion for summary judgment is **GRANTED** and Plaintiff's motion for summary judgment is **DENIED**. Plaintiff's claim for injunctive relief is **DENIED as moot** because the relief sought would replicate Defendant's policy for cart removal, which predates Plaintiff filing the complaint in the instant action and which the evidence shows is regularly enforced. **IT IS FURTHER ORDERED** that Plaintiff's request that the Court retain jurisdiction over its Unruh Act claim is **DENIED**, as it is not within the interests of judicial economy to exercise supplemental jurisdiction over the state law claim when there are no surviving original jurisdiction claims.

**IT IS SO ORDERED.**

DATED: September 21, 2021

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE